---
Stoner and Another v. Brown.
---

STONER and Another v. BROWN.

The payee of a note pledged and delivered it to another to secure the payment of a debt, but without endorsement; and whilst thus pledged, by fraud procured it for a pretended temporary purpose from the pledgee, and sold and assigned it, for a valuable consideration, to another person, who bought it in good faith, and without notice. *Held*, that such purchaser acquired a valid legal title to the note as against the pledgee and all others.

APPEAL from the *Laporte* Circuit Court.

DAVISON, J.—*Brown*, who was the plaintiff, brought this action against *Stoner* upon a promissory note, executed by *Stoner*, and payable to one *Henry C. Justice*, who assigned it, by endorsement, to the plaintiff. The note and endorsement are as follows:

"$1,000.                    *Laporte, Ind., March* 15*th*, 1856.

"On or before *December* 1st, 1856, I promise to pay to the order of *Henry C. Justice* 1,000 dollars, value received, without any relief from appraisement laws, with interest.

"DAVID STONER."

Endorsement: "Pay to *Benjamin F. Brown.*"

"HENRY C. JUSTICE."

*Stoner* answered by a general traverse. *Hannah Justice*, who, on her own motion, was made a defendant, answered by setting up that she, and not *Brown*, was entitled to the note and money, and for relief, prayed that judgment, for the amount, be rendered in her favor. Issues were made and submitted to the Court, who, at the instance of *Hannah Justice*, found the facts and conclusions of law involved on the trial. The special finding is as follows:

"Be it remembered, that the above cause being submitted to the Court for trial, the defendant requested the Court to find, and state specially, the facts, in order that they, or either

Stoner and Another *v.* Brown.

of them, might except thereto. And, therefore, after hearing the evidence, the Court finds:

"That said note, which is the foundation of this suit, was given by said *David Stoner* to said *Henry Justice;* that said *Henry* was the owner thereof, and was then indebted to said *Hannah Justice,* and agreed to secure her by said note; and in pursuance of such agreement, pledged and delivered to her the said note mentioned in the complaint in this case, by which she became authorized and entitled to receive and control said note, and the proceeds thereof; and that said *Henry* sold and transferred to *Joanna* and *Sarah Justice* all his residuary interest in said note, and the proceeds thereof, and authorized said *Hannah* to account to them, instead of to himself, for such residuary interest, if any, whatever it might be:

"That said note and other papers connected therewith, were in the possession of said *Hannah,* under said agreement; and whilst so in her possession, said *Henry* fraudulently requested her to let him take them to procure copies to be made of said notes and papers, and did fraudulently obtain them from her under the pretense that he wanted them a short time for that, and for no other purpose:

"That thereupon, without the knowledge or consent of said *Hannah,* he, said *Henry,* forthwith sold said note to the plaintiff for 880 dollars, and delivered it to the plaintiff. And the Court further finds, that in all of said transactions, said *Hannah* and said plaintiff, and said *Joanna* and *Sarah,* acted in good faith; but that said *Henry,* when he sold said note to said *Brown,* had no just or equitable right or title to the same, or the proceeds thereof, except so far as he was authorized by said *Hannah* to take it into his possession for the mere purpose of procuring a copy thereof to be made; but that said *Brown,* when he purchased said note, believed that said *Henry* was the owner thereof, and he had no notice or knowledge of the claim of said *Hannah Justice* to said note.

"And the Court finds, as a conclusion of law on the above mentioned facts, that the legal title to said note became and was vested in said *Brown* by the said purchase from said *Henry C. Justice,* and that the plaintiff is entitled to recover against said *David Stoner* the amount thereof. Whereupon the Court finds for the plaintiff, and assesses his damages at the sum of 1,217 dollars and 50 cents." .

And, having refused a new trial, rendered judgment, &c.

Did the assignment to the plaintiff vest in him the title to the note? This is the only question to settle. The finding of the Court establishes these facts: *Henry C. Justice* owned the note as its payee. He pledged and delivered it to *Hannah Justice,* to secure the payment of a debt. While the note was thus pledged, she, *Hannah,* was induced, by his fraudulent representations, to re-deliver it to him for a pretended temporary purpose; and, instead of returning the note to her, he sold, and for a valuable consideration, assigned it to the plaintiff, who had no notice whatever of the fact that it had been so pledged. The books say, that "as possession is necessary to complete the title by pledge, so, by the common law, the positive loss, or the delivery back of the thing, with the consent of the pledgee, terminates his title. However, if the thing is delivered back to the owner for a temporary purpose only, and it is agreed to be re-delivered by him, the pledgee may recover it against the owner, if he refuses to restore it after the purpose is fulfilled." Story on Bailments, sec. 299, and cases there cited.

This exposition is doubtless correct. But in view of the case made by the record, it must be conceded that the note never was assigned to *Hannah Justice;* that its legal title still remained in *Henry Justice;* and the result is, she had a mere equitable right to possess the note, and control its proceeds. As between her and him, her equity would no doubt be protected against his fraud; but is she entitled to such protection

against the plaintiff, who is a *bona fide* purchaser without notice of her equitable rights? We think she is not. The endorsement and delivery of the note, by *Henry C. Justice,* to the plaintiff, invested him with the legal title, and having purchased and paid for it in *good faith,* his equity, independent of his legal title, is at least equal to that of *Hannah Justice,* and the rule is, "where there is equal equity, the law must prevail." 1 Story Eq. Jur. sec. 64. "As between a person who has an equitable lein, and a third person who has purchased a thing for a valuable consideration, and without notice, the prior equitable lien shall not overreach the title of the vendee." *Lickbarrow* v. *Mason,* 6 East. 22. The principles thus stated obviously apply to the case at bar, and are decisive in favor of an affirmance of the judgment.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*John B. Niles,* for the appellants.